BAGWELL, (UNITED STATES v.) See Case No. 14,494.

BAILEE v. COMINGS. See Case No. 733.

## Case No. 726.

### In re BAILEY.

[1 N. Y. Leg. Obs. 18; 5 Law Rep. 320.] [1]

District Court, S. D. New York. Aug. 15, 1842.

BANKRUPTCY—VOLUNTARY PETITION — CONCEAL-
MENT OF PROPERTY—EVIDENCE.

[1. To defeat a voluntary petition to be de-
clared a bankrupt, under Act Aug. 19, 1841,
(5 Stat. 440, c. 9,) creditors must prove that the
petitioner had property at the time of his appli-
cation which he knowingly and intentionally
omitted to state in his inventory.]

[2. Evidence that the bankrupt had earned
and possessed property in past years is not suffi-
cient to support the objection to his petition, or
to cast on the bankrupt the onus of accounting
for it, unless it is also shown that he had
property at or near the time of his alleged in-
solvency.]

[3. A want of providence in the management
of property, or a refusal to appropriate it to the
payment of debts, or even proof that it was dis-
sipated or squandered dishonestly, does not af-
ford a bar to a petition under the bankruptcy
act of August 19, 1841, (5 Stat. 440, c. 9.)]

[4. The purchase of the bankrupt's furniture
by his son-in-law at an execution sale, though
the goods were subsequently left in the pos-
session of the bankrupt's family, (but not re-
maining with him at the time of his applica-
tion,) and the purchase of his real estate at a
mortgage sale by another son-in-law, do not
afford presumptive evidence of an ownership re-
maining in the bankrupt, which would require
him to account for the property in his schedules,
under Act Aug. 19, 1841, (5 Stat. 440, c. 9.)]

In bankruptcy. This was an opposition
by the creditors of John Bailey (who had
petitioned for a decree in bankruptcy, [under
Act Aug. 19, 1841, 5 Stat. 440, c. 9] on the
report of the commissioner, to whom the
case had been referred, showing cause
against the petitioner being declared a bank-
rupt. The evidence went into the dealings
and transactions of the petitioner from the
year 1820 to the present time, but no par-
ticular specific fraud or concealment of prop-
erty appeared to be made out. [Objections
disallowed.]

Mr. Monell, for creditors.
Mr. Jansen, for bankrupt.

BETTS, District Judge. The question
whether the petitioner shall be deemed a
bankrupt comes upon objections filed by his
creditors, and the report of the commission-
er of the proofs thereon. A wide extent of
proof has been allowed the creditors, and
the general bearing of it as a whole seems
to be, that the petitioner has, since the year
1820, been in possession of property, or en-
titled to receive it, which is not clearly ac-
counted for by him. Admitting the infer-
ence is supported by the facts in evidence,

[1] [5 Law Rep. 320, contains partial report
only.]

that the appreciation of real estate pur-
chased in Goshen by the petitioner, the prof-
its of his various copartnerships, his rents,
the monies retained by him on loan, &c.,
placed at his disposal an amount of money
greatly beyond what he has shown to have
been expended or appropriated by him, it
by no means follows that such inference
supports the objections taken in this case.
The petition was filed on the first of March
last, and the question at issue accordingly
is, whether the petitioner set forth a true ac-
count of the property, rights and credits be-
longing to him at that time. He asserts
that he has done so. This the creditors
deny, and undertake to establish their alle-
gation by proof. The pertinency and effect
of the evidence to maintain this point on
their part is, therefore, the essential subject
for consideration. It is obvious, however,
that, as the periods compared recede in
point of time, the force of the presumption
weakens so as to become exceedingly feeble,
and even amounts to no evidence at all
unless supported by corroborative circum-
stances.

In the case before the court, proof that
the petitioner had $1,000 in cash on the first
of February or first of January, 1842, would
import that it remained his on the first of
March, unless some clear explanation of its
disposition was furnished. But evidence
that such amount went into his hands in
1826, would be but an exceedingly slight
ground for inferring that he had it in 1842,
in the absence of any statement of his de-
nying its possession, and would raise no
suspicion in impeachment of his oath upon
the subject.

Two or three other general features of the
case will be adverted to as illustrative of the
doctrine upon which this decision will be
grounded.

The creditors undertake to trace the cir-
cumstances and course of business of the
bankrupt for twenty years and more, from
his removal to Goshen, in the year 1820,
with his family, where he commenced the
grocery business with a capital of $500, and
household furniture worth about $200,
through his various employments as mer-
chant by himself and in partnerships; as
tavern-keeper; keeper of the county gaol;
butcher, and clerk in a store, and though,
during the running of this period of time,
and in his shifting avocations, it is in proof
that money had been earned and property
acquired by him, which sums up in the ag-
gregate to a considerable amount; and, al-
though his own statement of his affairs, and
the receipts and expenditures of monies be
admitted loose and unsatisfactory as a mat-
ter of debit and credit or strict accounting,
yet his income and means are not shown to
be of a magnitude that they might not, in
that long period of time, have been absorbed
in the ordinary expenses of a family, or be-
lost through his own improvidence or prodi-

gality without exciting special remark or notice. Furthermore, it does not appear upon the proofs, the bankrupt was ever regarded a man of affluence, nor is there evidence of any clear investment of property by him whilst he so continued in business.

On the contrary, the general complexion of the evidence denotes that his circumstances must have been during the time rather straitened and embarrassed; for his real estate was placed under mortgages, and was ultimately sold on their foreclosure, and judgments were at times obtained against him, on one of which his personal effects were ultimately all sold.

The most the whole of this description of proof makes out, in my judgment, is, that the bankrupt was placed in circumstances where, by prudence and good judgment, he might have secured property to himself; but it failed to prove he ever acquired means which placed him independent of his debts and liabilities. But, taking the view of the proofs urged on the part of the creditors, that they show the bankrupt realized several thousands of dollars from the profits of his various businesses, this fact will in no way support the objections, unless the right to such property is shown to have continued with him at the period of this application. If it has been squandered by extravagant living, or dissipated by improvident management, or some supposition of an opprobrious character be involved in its disappearance, no such circumstances would support the objections. The act demands of the bankrupt the surrender of the property actually his when he presents his petition, but holds him to no accountability for past improvidence or vice in the disposition of his estate. The creditors, in resisting his prayer for a discharge, take upon themselves to prove he has not produced and surrendered all his property—that there is property still at his command, or in which he has a subsisting equity.

The testimony very clearly shows, that at least when the bankrupt left Goshen and removed to Middleton, he had been, by various proceedings at law and equity, stripped of all the property he was known to possess. It is thought there are badges of fraud discerned in those proceedings, because one of his sons-in-law purchased his personal property at a sheriff's sale, and another acquired a portion of his real estate from the mortgagee who had bid it in on a mortgage sale. To give any significance to these imputations of fraudulent contrivance, it is necessary that the right of property should have been left in the bankrupt after the sale as it was before; that he should have advanced the money to make the purchases, or that a possession should have been allowed him, which might be regarded a fraud on creditors. No rule of law or equity inhibits the purchase of a father-in-law's property at public sale by his son-in-law, the relationship only availing

to help out or give point to proofs of mala fides in the transaction. There is no such proof in this case to be helped by the presumption or suspicion. The bankrupt had ceased to have any possession of the personal property for more than a year before his application under the act, and the testimony is direct and positive that he retained no interest whatever in the real estate after the foreclosure of the mortgage and sale under it. It is not intended to assert that this is a plain case of open and ingenuous proceeding in all respects on the part of the bankrupt. There are doubtless many matters disclosed by the proofs that give occasion to doubt whether he had dealt with entire fairness towards his creditors while he was in credit and had command of means which might have been applied in part to their benefit, and the want of plain and full accounts of his business transactions, not only tends to embarrass inquiry into the state of his affairs, but is calculated to awake suspicion that there is an intentional concealment of facts which would operate to his prejudice.

Be the effects of these investigations what they may upon the general correctness or integrity of the bankrupt's dealings, I think the evidence as it stands will justly admit of only one conclusion bearing on the issue now to be decided, and that is, that it does not show the bankrupt to have had property of any kind at the time this petition was filed. Admitting there are circumstances brought to light in the review of the bankrupt's affairs, which might most naturally excite suspicion in minds of his creditors, I should still do injustice to my own impressions, deduced from the testimony, if I did not add that I discover no deficiency in his means that might not be readily accounted for from ungainful adventures in business — an expenditure in living fully up to, if not above, his income, and losses in his bad speculation in Middleton. It is not however of moment now to adjust the weight of evidence applicable to either of these hypotheses; the point submitted upon these objections is disposed of by pronouncing that the creditors have failed to sustain them by proof. It is accordingly ordered, that the objections be disallowed, and the petitioner have leave to put his case on the docket, and move for a decree of bankruptcy.